# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2793

_____

Blue Moon Entertainment, LLC,      *
                                            *

            Appellant,             *

                                            *   Appeal from the United States

          v.                      *   District Court for the

                                            *   Western District of Missouri.

City of Bates City, Missouri, a     *

Municipal Corporation; Greg Ford  *

in his individual capacity,        *

                                            *

            Appellees.           *

_____

Submitted: January 12, 2006
Filed: March 10, 2006

_____

Before BYE, HEANEY, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Blue Moon Entertainment, LLC ("Blue Moon") appeals the district court's denial of its motions for a temporary restraining order and/or a preliminary injunction. We vacate the district court's order and remand for further proceedings.

I.

Blue Moon Entertainment owns a parcel of developed, but apparently unzoned, property, identified as 304 Old U.S. Highway West, Bates City, Missouri. Blue Moon seeks to operate an adult entertainment establishment, featuring dancing performed by women attired only in "pasties" and "G-strings." All businesses in Bates City are required to obtain an occupational license prior to commencing operations, and on January 8, 2004, Blue Moon filed an application for such a license. According to the municipal code, if no action is taken on an application within fifteen days, the applicant may appeal to the Board of Aldermen of Bates City. On January 28, 2004, after no action had been taken on its license, Blue Moon filed a written appeal.

In a letter dated February 24, 2004, Bates City informed Blue Moon that the municipal code had been amended on April 10, 2001, to add section 406. This section includes a requirement that businesses obtain permits for certain "conditional uses," and it classifies an "adult night club" as a "conditional use which must be approved after public hearings before the Planning and Zoning Commission and the Board of Aldermen." The new section provides, in pertinent part:

> Any of the following uses may be allowed by special permission of The Board of Aldermen after a recommendation from the Planning and Zoning Commission under the standard included herein and under such conditions as the Board of Aldermen may impose. After a public hearing by the Planning and Zoning Commission and a public hearing by the Board of Aldermen a "Conditional Use Permit" may be issued. The issuance of this permit must provide that in the judgment of the Board of Aldermen such use will not seriously injure the appropriate use of neighboring properties, and will conform to the general intent and purpose of this ordinance, and shall comply with height and area requirements of the district the special use is located in.

Conditions set by the Board of Aldermen may include, but [are] not limited to; special yard requirements, open spaces, buffer zones, fences, walls, landscaping and it's [sic] maintenance, erosion control, street improvement requirement, vehicle parking, building time frame, hours of operation, building location, or any other condition the Board of Aldermen may deem necessary to ensure the compatibility with surrounding uses, and to preserve the public health, safety, and welfare.

Section 406 further states that "adult night clubs" are "allowed in C-1 Districts provided that no such use be established within 1,250 [feet] of any church, school, day care facility, public building, public or private park, hospital, any use listed in Section A-12 or A-15, or area zoned for residential use." To receive a permit, the applicant also must show that the proposed use will not "be contrary to the public interest or injurious to nearby properties, and the spirit and intent of the ordinance will be observed," the use will not "encourage or enlarge the development of a 'blighted' area," and the use will not "cause an unwanted increase in the normal law enforcement exposure in the area." Finally, the "[p]arking areas shall be of hard surface and designed by an engineer to drain storm water in an appropriate manner not on adjoining properties." (J.A. at 30-31).

In its letter responding to Blue Moon's appeal, Bates City explained that because the occupational licensing provision "requires that the applicant for a occupational license 'comply in every respect with the zoning ordinance and/or other ordinances of the City,' and a conditional use permit has not yet been obtained, the issuance of an occupational license is not appropriate." (J.A. at 75). Bates City concluded that until Blue Moon obtained a conditional use permit, it would not be eligible for an occupational license. On March 3, 2004, Bates City informed Blue Moon that in addition to obtaining a conditional use permit, Blue Moon must also request a zoning change for the property to a C-1 General Commercial District. (J.A. at 77).

Blue Moon did not apply for a conditional use permit or seek to have the property rezoned, but instead filed suit in the district court. The complaint alleged that section 406 was enacted in violation of municipal and state law, and, alternatively, that it was an unconstitutional restriction on Blue Moon's rights under the First and Fourteenth Amendments. Blue Moon sought a temporary restraining order and/or a preliminary injunction to enjoin enforcement of the ordinance. The district court denied Blue Moon's motion for injunctive relief, and Blue Moon appeals.

## II.

In determining whether to issue a preliminary injunction, the district court must consider (1) the threat of irreparable harm to the movant, (2) the balance between such harm and the injury that granting the injunction will inflict on the other interested parties, (3) the probability that the movant will succeed on the merits, and (4) whether the issuance of an injunction is in the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). We review the district court's decision for abuse of discretion. *Id*. at 114.

In denying injunctive relief, the district court correctly noted that the failure of a movant to show irreparable harm is an "independently sufficient basis upon which to deny a preliminary injunction." *Blue Moon Entm't, L.L.C. v. Bates City*, No. 04-1050-CV-W-HFS, slip op. at 3 (W.D. Mo. May 13, 2005) (citing *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). Seeking to maintain consistency with a prior unpublished opinion from the same court, *Blue Springs Gifts, L.L.C. v. City of Blue Springs*, No. 00-0586-CV-W-SOW-ECF (W.D. Mo. June 15, 2000), the district court held that because Blue Moon's "alleged harm might be remedied upon a simple application," Blue Moon could not demonstrate the irreparable harm necessary to obtain injunctive relief, unless it first applied for, and was denied, a conditional use permit. *Blue Moon Entm't, L.L.C.*, slip op. at 4 (internal quotation omitted). The

-4-

court noted that it would not have taken this course "if there were Eighth Circuit law or subsequent law placing it in serious doubt," *id.* at 5, but that in the absence of such precedent, the ruling of another judge on the same court should be followed "unless plainly unreasonable." *Id*. at 4 n.4. The district court thus denied Blue Moon's motion for a preliminary injunction based on the absence of irreparable harm, and did not consider the merits of the First Amendment claim. *Id.* at 5.

Bates City does not dispute that Blue Moon's proposed activities are protected by the First Amendment, in light of the Supreme Court's conclusion that even fully nude dancing is expressive conduct entitled to some First Amendment protection. *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (plurality opinion); *id*. at 310 (Souter, J., concurring); *id*. at 319 (Stevens, J., dissenting); *Barnes v. Glen Theatre, Inc*., 501 U.S. 560, 565-66 (1991) (plurality opinion); *id*. at 592 (White, J., dissenting); *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 66 (1981); *see also SOB, Inc. v. County of Benton*, 317 F.3d 856, 859 (8th Cir. 2003). First Amendment activities generally may be restricted by a zoning ordinance that contains "content-neutral" regulations governing the time, place, and manner of expression, so long as the ordinance is designed to serve a substantial governmental interest and does not unreasonably limit alternative avenues of communication. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47 (1986). If, however, the ordinance requires that an individual obtain a license or permit prior to engaging in the protected activity, then the licensing scheme is analyzed as a "prior restraint" on the activity. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 223 (1990) (plurality opinion); *id*. at 238 (Brennan, J., concurring in the judgment); *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988).

Ordinarily facial challenges to legislation are disfavored, but in the context of prior restraints on speech or expression, the Supreme Court has "long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may

challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood*, 486 U.S. at 755-56; *see also FW/PBS, Inc.*, 493 U.S. at 223; *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151 (1969); *Freedman v. Maryland*, 380 U.S. 51, 56 (1965). This is because "the mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." *City of Lakewood*, 486 U.S. at 757. A licensing scheme generally must provide narrow, objective, and definite standards to guide the licensing authority, *Shuttlesworth*, 394 U.S. at 151, may only impose a restraint for a specified and reasonable period, and must provide for prompt judicial review. *Freedman*, 380 U.S. at 58-59; *FW/PBS*, 493 U.S. at 228. It must not vest unbridled discretion in the hands of a government official. *FW/PBS, Inc.*, 493 U.S. at 225-26.

Section 406 of the Bates City Municipal Code requires an adult business to obtain a conditional use permit prior to engaging in a protected activity, and, therefore, it is a prior restraint that Blue Moon may challenge facially. *See, e.g.*, *FW/PBS, Inc.*, 493 U.S. at 225. The loss of First Amendment freedoms, even for the period required to litigate a facial challenge, may constitute an irreparable injury. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). Thus, the district court erred in finding that Blue Moon's failure to apply for the conditional use permit is *per se* fatal to its ability to demonstrate irreparable harm.

At oral argument, Bates City argued that even if the conditional use permit requirement, as currently designed by the city, amounted to an unconstitutional prior restraint, Blue Moon still could not show irreparable harm, because adult businesses are permitted only within areas zoned as "C-1," and Blue Moon has not sought to have the parcel rezoned accordingly. Blue Moon is not entitled to injunctive relief, the city contends, because its inability to operate an adult business at the current location cannot fairly be traced to the permit requirement. *See, e.g.*, *M.J. Entm't v. City of Mount Vernon*, 234 F. Supp. 2d 306, 311-13 (S.D.N.Y. 2002). Because the

district court concluded that Blue Moon could not show irreparable harm without first applying for a conditional use permit, it did not address this argument regarding zoning. Nor did the district court consider whether the permit scheme conformed to constitutional requirements, whether the ordinance was validly enacted, or whether Blue Moon could satisfy the other *Dataphase* requirements for the granting of injunctive relief. Accordingly, we remand the case for the district court to develop the evidentiary record, if appropriate, and to consider these matters in the first instance.[1]

We vacate the district court's order denying Blue Moon's motion for a preliminary injunction and remand for further proceedings not inconsistent with this opinion.

_____

---

[1]Blue Moon also argues that the district court erred by denying its motion to file excess pages as part of its suggestions in support of its motion for injunctive relief. It is evident that the district court accepted the overlength submission and then denied the motion as moot, because the suggestions already had been filed. (App. at 115, 119-20). Accordingly, there is no merit to this aspect of Blue Moon's appeal.